FILED
2024 Jan-02  PM 02:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **JEMAYEL SCOTT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. _____** |
| | ) | |
| **LIEUTENANT TRINA PHILLPS,** | ) | |
| **OFFICER RICHARD HOLTZMAN,** | ) | |
| **OFFICER COURTLAND JONES,** | ) | |
| **OFFICER JACOB EDWARDS,** | ) | |
| **OFFICER JON HILL, OFFICER** | ) | **JURY TRIAL DEMANDED** |
| **MATT PRICE, and NURSE** | ) | |
| **PRACTITIONER ALEISHA** | ) | |
| **HERRON,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

**COMES NOW**, the Plaintiff, Jemayel Scott, by and through the undersigned counsel, and alleges the following:

## PRELIMINARY STATEMENT

At all times relevant to this action, Plaintiff, Jemayel Scott, was housed as a pre-trial detainee at the Walker County Jail in Jasper, Alabama. On January 9, 2023, Mr. Scott was unlawfully and brutally attacked and beaten by a fellow inmate and Correctional Officer Richard Holtzman. After being seriously injured as a result of the unlawful attacks, Plaintiff was denied prompt and adequate medical care, thereby exacerbating his injuries and pain and suffering. This civil

action seeks redress for Defendants' violations of Mr. Scott's constitutional rights, pursuant to 42 U.S.C. § 1983.

## **PARTIES**

1. **Jemayel Scott ("Plaintiff" or "Mr. Scott")** is a citizen of the United States, a citizen of the State of Alabama, and is over nineteen (19) years of age. At all times relevant to this action, Mr. Scott was housed as a pretrial detainee at the Walker County Jail in Jasper, Alabama.

2. **Lieutenant Trina Phillips ("Defendant Phillips")** is a citizen of the United States, a citizen of the State of Alabama, and is over nineteen (19) years of age. At all times relevant to this action, Defendant Phillips was a Lieutenant at the Walker County Jail and acted under the color of law.

3. **Officer Richard Holtzman ("Defendant Holtzman")** is a citizen of the United States, a citizen of the State of Alabama, and is over nineteen (19) years of age. At all times relevant to this action, Defendant Holtzman was a Correctional Officer at the Walker County Jail and acted under the color of law.

4. **Officer Courtland Jones ("Defendant Jones")** is a citizen of the United States, a citizen of the State of Alabama, and is over nineteen (19) years of age. At all times relevant to this action, Defendant Jones was a Correctional Officer at the Walker County Jail and acted under the color of law.

5. **Officer Jacob Edwards ("Defendant Edwards")** is a citizen of the United

2

States, a citizen of the State of Alabama, and is over nineteen (19) years of age. At all times relevant to this action, Defendant Edwards was a Correctional Officer at the Walker County Jail and acted under the color of law.

6. **Officer Jon Hill ("Defendant Hill")** is a citizen of the United States, a citizen of the State of Alabama, and is over nineteen (19) years of age. At all times relevant to this action, Defendant Hill was a Correctional Officer at the Walker County Jail and acted under the color of law.

7. **Officer Matt Price ("Defendant Price")** is a citizen of the United States, a citizen of the State of Alabama, and is over nineteen (19) years of age. At all times relevant to this action, Defendant Price was a Communications Officer and member of the Critical Incident Response Team ("C.I.R.T") at the Walker County Jail and acted under the color of law.

8. **Nurse Practitioner Aleisha Herron ("Defendant Herron")** is a citizen of the United States, a citizen of the State of Alabama, and is over nineteen (19) years of age. At all times relevant to this action, Defendant Herron was employed by the private medical contractor for the Walker County Jail. As a nurse practitioner at the Jail, Defendant Herron assumed and performed an essential duty of the State of Alabama to provide constitutionally adequate and necessary care for inmates housed at the Jail.

## JURISDICTION AND VENUE

9.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), 28 U.S.C. § 1343(a)(4), and 42 U.S.C. § 1988(a), as this action seeks redress for a violation of Plaintiff's Eighth and Fourteenth Amendment rights under the Constitution of the United States, pursuant to 42 U.S.C. § 1983.

10. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a), as they arise from the same case or controversy and are so related to Plaintiff's 42 U.S.C. § 1983 claims.

11. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events and omissions that give rise to Plaintiff's claims occurred within this Court's judicial district.

## FACTUAL ALLEGATIONS

**I.    The Initial Attack of Plaintiff by Another Inmate.**

12. On or about January 2, 2023, at approximately 8:30 p.m., Walker County Jail inmate Derek A. Zamzow ("Mr. Zamzow") wrote a letter to Defendant Lieutenant Trina Phillips fearing for his safety and the safety of other inmates.

13. According to the letter, Tayvionne Johnson ("Mr. Johnson"), another inmate at the Jail, was in possession of a broomstick. Mr. Zamzow stated that he "feared

for his life and for the safety of the dorm."[1] He reasonably believed Mr. Johnson would seriously injure another inmate if the broomstick was not confiscated.

14. Despite being notified of the safety risk to all in the dorm, neither Defendant Phillips nor any other person employed at the Walker County Jail took any action to remove Mr. Johnson from the dorm or to confiscate the broomstick from Mr. Johnson's possession.

15. Approximately one week later, on January 9, 2023, Mr. Johnson attacked Plaintiff with the very same broomstick that Mr. Zamzow warned Defendant Phillips about.

16. As a result of the attack by Mr. Johnson, Plaintiff was injured and required medical care and treatment.

17. Walker County records note that Plaintiff was "struck in the face with a broom stick" by another inmate. The records also noted moderate bleeding from Plaintiff's nose and bruising and swelling to his eyes and forehead.

## II.    The Subsequent Attack of Plaintiff by Defendant Holtzman.

18. After being assaulted by Mr. Johnson, Plaintiff was placed in medical holding cell number RX-3 as he awaited medical care and treatment.

19. Plaintiff had been held in RX-3 for hours, though he required prompt medical care. At some point, Plaintiff requested a cup of water.

---

[1] Upon information and belief, both Plaintiff and Mr. Johnson were housed in "D Dorm."

20. Plaintiff asked Defendant Holtzman to be moved to a booking cell in an attempt to expedite any medical attention.

21. Defendant Holtzman refused Plaintiff's request and pushed him back into RX-3. Before closing the cell, Defendant Holtzman sprayed Plaintiff with a chemical irritant.

22. Defendant Holtzman grabbed a baton from another officer, struck the cell door, and struck Plaintiff with the baton.[2] Plaintiff did not pose a physical threat of harm to Defendant Holtzman.

23. Defendants Jones, Edwards, Hill, and Price all witnessed the attack firsthand and failed to intervene.

24. Plaintiff, who was unarmed and uncuffed, attempted to protect his person from the already violent attack. Consequently, Plaintiff successfully removed the baton from Defendant Holtzman's possession.

---

[2] The assault was captured on film by Walker County surveillance cameras. In a wrongful death lawsuit against the Walker County Sheriff and other correctional officers where an inmate froze to death, Defendant Holtzman's attack of Plaintiff was mentioned. The complaint alleged that "As an example of the policy or practice of using excessive force and inflicting unnecessary and even sadistic harm on inmates housed [at the Jail], a video obtained by the individual who preserved the videos of what happened to Tony [Mitchell] shows the use of unnecessary and unreasonable force against another inmate, Jaymal [Jemayel] Scott. The video depicts an officer, Defendant Richard Holzman [Holtzman], using his fist to strike an inmate who was handcuffed and under officers' complete control, after the inmate had been sprayed with chemical irritant, beaten with a baton, and was bleeding profusely." *Margaret Mitchell, as Administratrix of the Estate of Anthony Don Mitchell v. Sheriff Nick Smith, et al.*; 2:23-cv-00182-SGC at ¶ 103.

25. Defendants Jones, Edwards, Hill, and Price ("Defendant Officers") then rushed into the cell.

26. Defendant Officers successfully handcuffed Plaintiff. At this point, Plaintiff did not and could not pose any threat to either Defendant as he was under the Defendant Officers' complete control. Plaintiff was bleeding profusely.

27. Defendant Holtzman retrieved the baton, put Plaintiff in a "headlock" position while handcuffed, and struck Plaintiff in the face several times with a closed fist.

28. Once again, Defendants Jones, Edwards, Hill, and Price watched and failed to intervene altogether.

29. Plaintiff weakly, desperately, and painfully crawled out of the cell.



*Defendant Holtzman opening the door to RX-3*
*eld.*

*Defendant Holtzman aiming a closed fist at*
*Plaintiff, who was unarmed.*



*Defendant Holtzman striking Plaintiff,*
*who was unarmed and under his complete control,*
*as Plaintiff bled profusely.*

### III.    Plaintiff's Extensive Injuries Resulting from the Attacks.

30. Investigator Carl Carpenter took photos of Plaintiff's face and condition after the unlawful attacks by Mr. Jonhson and Defendant Holtzman.

31. Walker County Jail records indicate that after the second attack, Plaintiff's face was "covered with blood." Some of the blood was dried, and there was active

bleeding.

32. Due to the extent of Plaintiff's injuries, he was immediately transported via EMS to Walker Baptist Medical Center's Emergency Department ("Walker Baptist").

33. Upon arrival, Plaintiff told Walker Baptist medical personnel that he was assaulted by a police officer. Plaintiff complained of pain to his neck, face, right shoulder, and right ankle.

34. Walker Baptist triage notes explained, "Patient was a victim of two assaults today at the walker county jail. Patient has two lacerations to his nose, a knot to the top of his head and left back area of his head. Also right ankle swelling. Patient is bloody upon arrival with bruising and swelling to the face."

35. During Plaintiff's physical examination, he began spitting up blood. It was noted that Plaintiff had a swollen right ankle, orbital edema, blood coming from his nose, and two small lacerations on the bridge of his nose. Further testing confirmed "displaced comminuted fractures of both the right and left nasal bones as well as the bony nasal septum."

36. Treating physician Cesar Ravelo, MD ("Dr. Ravelo") reviewed scans with UAB Hospital. According to physician notes, "UAB was advised that patient had potential of not being able to lay flat and continued to cough blood. UAB advised that patient will have blood discharge for the next week."

37. Dr. Ravelo further noted, "I have personally performed a substantive portion of the visit, including all aspects of the Medical Decision Making. Patient s/p assault with facial trauma. Case discussed with trauma surgeon at UAB who recommended outpatient follow up with Maxillofacial surgical department."

38. On January 11, 2023, Plaintiff was transported to ENT Associates of Alabama ("ENT Associates"). The chief complaint stated, "Patient presents today from jail following an alleged assault resulting in extensive facial trauma. . . his facial CT demonstrated multiple fractures including orbital area on the left side."

39. Additional notes stated, "Plaintiff has scattered abrasions over the nasal dorsum with comminuted nasal bone fracture. There is extensive left eye edema with crepitus. Extensive ecchymosis. Tenderness to palpation along the maxilla on the left side with palatal ecchymosis on the left as well. Extraocular movements are intact, he has a subconjunctival hemorrhage on the left side. The nose is hemostatic. The septum is deviated to the left side."

40. After reviewing Plaintiff's extensive injuries, John Stafford, MD ("Dr. Stafford") explained, "Plaintiff has extensive facial fractures including orbital blowout fracture as well as an ocular injury with a subconjunctival hematoma on the left side. We provided the officer with information regarding the referral to UAB ophthalmology as well as facial plastic surgery. If they are unable to be seen promptly this week, would recommend taking the patient to the emergency

department at UAB."

41. Dr. Stafford also wrote, "Information was provided to them regarding this referral [to UAB ophthalmology]. We are unable to secure these appointments for the patient, but the recommendation and referral were given to the jail attendant. We will make these referrals as best we can. If they are unable to be seen promptly, I would recommend the patient go to the emergency department at UAB."

## IV. Defendant Allred's Deliberate Indifference to Plaintiff's Serious Medical Needs.

42. Despite clear medical instruction otherwise, Plaintiff was returned to the Walker County Jail with little-to-no medical care.

43. Nearly two weeks after his visit with ENT Associates, Plaintiff was transported to UAB. UAB Physicians recommended a "septorhinoplasty for deviated septum and collapsed internal nasal valve." Physicians also noted that the procedures were pending approval by the Jail.

44. On January 31, 2023, Mary Ellen Mims, RN ("Nurse Mims") noted to Plaintiff's medical file, "I am working on clearance. Can you scan in the posting sheet and add that we need clearance?"

45. On or around the beginning of February of 2023, Defendant Herron took Plaintiff off his blood thinners in anticipation for surgery.

46. On February 1, 2023, Nurse Mims noted, "Spoke to Walker Co. Jail. . .they

directed me to speak to the NP [Nurse Practitioner] who manages his Eliquis [blood thinner]. Alisha Herron. . . spoke to Alisha and sent clearance request to her."

47. On February 9, 2023, Nurse Mims noted, "Called Alisha again, no answer, left VM [voicemail]. Resent clearance also via secure email."

48. On February 16, 2023, Nurse Mims noted, "Clearance not received, spoke to Alisha again, she reports she faxed, but I don't see it. She will resend via fax."

49. Later that same day, Nurse Mims noted, "Clearance received. Asheila states patient has already been hold Eliquis. I advised surgery isn't scheduled and unsure of date, up to her as prescriber if she wants him to resume until OR date is set."

50. On or around February 21, 2023, after being taken off blood thinners for approximately three weeks with no surgery, Plaintiff's mother and his counsel made several attempts to contact Jail personnel to either resume Plaintiff's blood thinners or to expedite his surgery.

51. Defendant Herron had actual knowledge of Plaintiff's serious medical need, as evidenced from Plaintiff's medical records from Walker Baptist, ENT Associates, UAB, requests from Plaintiff's mother, and requests from Plaintiff's counsel.

52. Additionally, Plaintiff made several medical requests for pain medication,

follow up care, and regularly questioned when his surgery would occur.

53. Despite such knowledge, Defendant Herron failed to ensure Plaintiff received prompt follow up care, reasonable pain medication, or any treatment that could alleviate his constant pain from the assaults.

54. On or around February 21, 2023, Defendant Herron resumed Plaintiff on Eliquis. As of that date, no surgery was scheduled for Plaintiff, and he had not returned for follow-up care as recommended by Dr. Ravelo and Dr. Stafford.

55. In fact, Walker County Jail personnel, including Defendant Herron, deliberately delayed Plaintiff's medically necessary surgery because Plaintiff did not have personal health insurance to pay for the surgery.[3]

56. Plaintiff's mother called several personal health insurance providers in a desperate attempt to secure Plaintiff personal health insurance, so he could have the surgery he so desperately needed.

57. On or around March 8, 2023, during a hearing for pending criminal charges against Plaintiff, Captain Ralph Williams ("Captain Williams") admitted that Plaintiff had not received the surgery because he did not have personal health insurance to pay for the surgery.

58. Captain Williams assured the Court that the Jail would ensure Plaintiff's

---

[3] "A defendant also cannot deny or delay necessary medical treatment to coerce pre-payment by a person in custody without running afoul of the Eighth Amendment." *Melton v. Abston*, 841 F.3d 1207, 1223-24 (11th Cir. 2016) (citing *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 704 (11th Cir. 1985)).

surgery was scheduled to prevent Plaintiff's bond from being reduced.

59. On or about March 16, 2023, approximately two months after being brutally assaulted, Plaintiff had facial reconstructive surgery at UAB Hospital.

## V.    Defendant Holtzman's Deliberate Indifference to the Safety and Well-Being of Inmates Housed at the Walker County Jail.

60. Upon further information and belief, Defendant Holtzman used intimidation tactics to persuade inmates not to report uses of excessive force in which he was involved.

61. For example, on or about March 10, 2023, the C.I.R.T Team went to "D-Dorm" where Plaintiff was housed. Defendant Holtzman attempted to intimidate Plaintiff and prevent him from filing any formal complaint against him for the unlawful attack that made the basis of this suit.

62. More specifically, Defendant Holtzman told Plaintiff "to keep his fucking mouth shut" and threw Plaintiff's blanket in the dorm's toilet. Plaintiff reported this incident to the shift supervisor, who provided Plaintiff with a new blanket.

63. Additionally, Defendant Holtzman has been at the center of similar litigation in his capacity as an officer at the Walker County Jail.

64. Defendant Holtzman was a named officer in the wrongful death suit against the Walker County Sheriff's Department, seeking redress for the shocking and inhumane treatment and subsequent death of Tony Mitchell ("Mr. Mitchell"). Mr. Mitchell was housed at the Walker County Jail at the time of his death.

After being locked in the Jail's freezer for several hours, Defendant Officer Holtzman and two other officers are seen on camera carrying Mr. Mitchell's limp, frozen body to a police car for outside medical care and treatment.

65. Defendant Holtzman is still employed by the Walker County Jail and used his intimidation tactics to ridicule and intimidate Plaintiff until his release from the Jail.

## CAUSES OF ACTION

## FEDERAL CLAIMS

### COUNT I: VIOLATION OF 42 U.S.C. § 1983 – EXCESSIVE FORCE

66. Plaintiff adopts and re-alleges paragraphs 1, 3, 9, 11, 18-22, and 24-41 of this Complaint as if fully set forth herein.

67. This Count applies to Defendant Holtzman.

68. As a correctional officer employed at the Walker County Jail, Defendant Holtzman had a duty to ensure the safety and well-being of the inmates housed at the Jail.

69. As described more fully herein, Defendant Holtzman used unnecessary, excessive, and unlawful force against Plaintiff when he sprayed him with a chemical irritant and severely beat him with a baton though Plaintiff posed no threat of harm to him.

70. Moreover, Defendant Holtzman used unnecessary, excessive, and unlawful

force against Plaintiff when he struck him in the face with a closed fist several times, after Plaintiff was handcuffed and could not pose any threat of harm to any person.

71. Such force described above was unreasonable and excessive in light of the facts and circumstances present at the time the force was used.

72. Defendant Holtzman intentionally used extreme and excessive cruelty toward Plaintiff for the very purpose of causing him harm.

73. As a result of Defendant Holtzman's unjustified and unconstitutional use of force, Plaintiff sustained severe injuries to his neck, face, right shoulder, and right ankle. Consequently, Plaintiff underwent facial reconstructive surgery to repair the extensive damage.

74. The force exercised by Defendant Holtzman amounted to a clear violation of Plaintiff's constitutionally protected right to be free from cruel and unusual punishment as guaranteed by the Eighth Amendment of the United States Constitution.

## COUNT II: VIOLATION OF 42 U.S.C. § 1983 – FAILURE TO INTERVENE

**75.** Plaintiff adopts and re-alleges paragraphs 1,2, 9, 11-17, and 30-41 of this Complaint as if fully set forth herein.

**76.** This Count applies to Defendant Phillips.[4]

**77.** As a Lieutenant employed at the Walker County Jail, Defendant Phillips had a duty to ensure the safety and well-being of inmates at the Jail.

**78.** Defendant Phillips knew that Mr. Johnson possessed a broomstick that posed a substantial risk of harm to all inmates who shared a dorm with him, including Plaintiff.

**79.** Despite being directly written that the broomstick posed a direct threat to the safety of all inmates in the dorm, Defendant Phillips failed to act altogether to either remove Mr. Johnson or the broomstick from the dorm.

**80.** Because of Defendant Phillips's failure to intervene, Mr. Johnson had the opportunity to attack Plaintiff with the same broomstick one week later.

81. Defendant Philips's failure to intervene was objectively unreasonable and was done with malice, willfulness, and/or deliberate indifference to Plaintiff's constitutional rights.

**82.** As a result of Defendant Phillips's failure to intervene, Plaintiff sustained substantial physical injuries to his person.

### COUNT III: VIOLATION OF 42 U.S.C. § 1983 –
### FAILURE TO INTERVENE

---

[4] The Eleventh Circuit has clarified "that a prison guard violates a prisoner's Eighth Amendment right when that guard actually (objectively and subjectively) knows that one prisoner poses a substantial risk of serious harm to another, yet fails to take any action to investigate, mitigate, or monitor that substantial risk of serious harm." *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1102 (11th Cir. 2014).

83. Plaintiff adopts and re-alleges paragraphs 1, 4-7, 9, 11, and 18-41 of this Complaint as if fully set forth herein.

84. This Count applies to Defendants Jones, Edwards, Hill, and Price.

85. As Correctional Officers employed at the Walker County Jail, Defendants Jones, Edwards, and Hill had a duty to ensure the safety and well-being of the inmates housed at the Jail.

86. As a Communications Officer and member of the C.I.R.T team employed at the Walker County Jail, Defendant Price had a duty to ensure the safety and well-being of the inmates housed at the Jail.

87. On January 9, 2023, Plaintiff was unlawfully assaulted by Defendant Holtzman as Defendants Jones, Edwards, Hill, and Price stood by and watched.

88. As described more fully above, each of the named Defendants in this Count had the opportunity and obligation to intervene to prevent the violation of Plaintiff's constitutional rights and failed to do so.

89. Defendant Officers watched as Plaintiff was sprayed with a chemical irritant and severely beaten with a baton by Defendant Holtzman.

90. Neither of the Defendants named in this count intervened during the unlawful attack. Moreover, the Defendants rushed and handcuffed Plaintiff after he successfully removed the baton from Defendant Holtzman's possession.

91. After Plaintiff was handcuffed, Defendant Holtzman continued the unlawful

and brutal attack by striking him several times in the face with a closed fist. Defendant Officers failed to wholly intervene once again, causing further deprivation of Plaintiff's constitutional right to be free from cruel and unusual punishment.

92. Defendant Officers' failure to intervene was objectively unreasonable and was done with malice, willfulness, and/or deliberate indifference to Plaintiff's constitutional rights.

93. As a result of Defendants' failure to intervene, Plaintiff sustained substantial physical injuries, including injuries to his neck, face, right shoulder, right ankle, and required facial reconstructive surgery.

## COUNT IV: VIOLATION OF 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE[5]

94. Plaintiff adopts and re-alleges paragraphs 1-3, 9, 11-22, 24-41, and 60-65 of this Complaint as if fully set forth herein.

95. This Count applies to Defendants Phillips and Holtzman.

96. As described more fully above, Defendant Phillips was both objectively and

---

[5] To prove deliberate indifference, a plaintiff must "produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013) (quoting *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003)). "To be deliberately indifferent a prison official must know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and *he must also draw the inference.*" *Id.* at 1332. (internal quotations omitted).

subjectively aware that Plaintiff and all inmates housed in "D Dorm" were at a substantial risk of serious harm because Mr. Johnson had the broomstick in his possession.

97. Defendant Phillips recklessly disregarded such risk when she failed to remove either Mr. Johnson or the broomstick from "D Dorm."

98. Defendant Phillips's reckless disregard provided Mr. Johnson with the opportunity to brutally attack Plaintiff with the broomstick.

99. As described more fully above, Defendant Holtzman was both objectively and subjectively aware that Plaintiff had been assaulted by Mr. Johnson and required medical care and treatment as he was held in RX-3. Defendant Holtzman was further aware of the substantial risk of further serious harm and exacerbated injuries Plaintiff faced if he was further beaten.

100. Defendant Holtzman recklessly disregarded such risk when he sprayed Plaintiff with a chemical irritant and struck Plaintiff with a baton when he posed no threat of harm to any person.

101. Defendant Holtzman further recklessly disregarded such risk when he struck Plaintiff in the face several times with a closed fist, after Plaintiff was handcuffed and under Defendants' complete control.

102. As a direct and proximate result of Defendants Phillips and Holtzman's malice, reckless indifference and/or deliberate indifference to Plaintiff's safety

and well-being, Plaintiff's sustained substantial physical injuries, including injuries to his neck, face, right shoulder, right ankle, and required facial reconstructive surgery.

## COUNT V: VIOLATION OF 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS AND TREATMENT[6]

**103.** Plaintiff adopts and re-alleges paragraphs 1, 8, 9, 11, and 30-57 of this Complaint as if fully set forth herein.

**104.** This Count applies to Defendant Herron.

**105.** As described more fully above, Plaintiff had an objectively serious medical need as evidenced by his medical records from Walker Baptist, ENT Associates, and UAB.

106. Defendant Herron, who was employed to provide reasonable and necessary medical treatment to individuals in the Jail's custody, knew or should have known of the seriousness of Plaintiff's medical needs and the risk of serious harm and irreparable injury he faced if he did not receive prompt, reasonable, and necessary medical care.

107. Despite such knowledge, Defendant Herron delayed Dr. Ravelo and Dr.

---

[6] "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." *Nam Dang v. Sheriff, Seminole Cty. Fla.*, 871 F.3d 1272, 1280 (11th Cir. 2017) (quoting *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003)).

Stafford's orders regarding Plaintiff's follow-up care, failed to address Plaintiff's medical requests, and failed to clear Plaintiff for facial reconstructive surgery in a timely manner consistent with his medical records.

108.   As a result of such delayed medical care, Plaintiff suffered for approximately two months in agonizing pain until he received the medically necessary facial reconstructive surgery.[7]

109.   Defendant Herron's misconduct described in this Count was objectively unreasonable and was done intentionally, with malice, reckless indifference, and/or with deliberate indifference to Plaintiff's constitutional rights.

110.   As a direct and proximate result of Defendant's malice, reckless indifference, and/or deliberate indifference to Plaintiff's medical needs, medical treatment, and/or delay in providing medical care and treatment, Plaintiff's injuries and suffering were unnecessarily exacerbated.

## STATE CLAIMS

### COUNT VI: ASSAULT AND BATTERY

111.   Plaintiff adopts and re-alleges paragraphs 1, 3, 9-11, 18-22, and 24-41 of this Complaint as if fully set forth herein.

112.   This Count applies to Defendant Holtzman.

---

[7] "Even when medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs. *Nam Dang v. Sheriff, Seminole Cty. Fla.*, 871 F.3d at 1280. (*See Harris v Coweta Cty.*, 21 F.3d 388, 393-94 (11th Cir. 1994)).

113.  Defendant Holtzman sadistically and maliciously assaulted Plaintiff by willfully and intentionally inflicting serious harm to his person when he sprayed him with a chemical irritant and struck him with a baton several times.

114.  Moreover, Defendant Holtzman sadistically and maliciously assaulted Plaintiff by willfully and intentionally inflicting serious harm to his person when he struck Plaintiff with a closed fist several times after he was handcuffed, bleeding profusely, and under the Defendant Officers' complete control.

115.  Defendant Holtzman knew or should have known that his actions were known to carry severe medical risks, but he wholly disregarded such risks.

116.  As a result of Defendant Holtzman's actions, Plaintiff sustained injuries to his neck, face, right shoulder, right ankle, and required extensive facial reconstructive surgery.

## **PRAYER FOR RELIEF**

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully requests the entry of judgment against Defendants pursuant to an order awarding:

a.  Compensatory damages for emotional distress, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and special damages in an amount to be determined by a jury;

b.  Nominal damages in an amount to be determined by a jury;

c.  Punitive damages in an amount to be determined by a jury;

d.  Reasonable attorney's fees and costs; and

e.  All other and further monetary and/or equitable relief as this Honorable court may deem just and proper.

## **JURY DEMAND**

Plaintiff respectfully requests a trial by jury on all issues so triable.

Respectfully submitted this 31st day of December, 2023.

*/s/ Kristen E. Gochett*
Kristen E. Gochett
Leroy Maxwell, Jr.

**OF COUNSEL:**
**Maxwell & Tillman**
2326 2nd Avenue North
Birmingham, AL 35203
Phone: (205) 216-3304
Fax: (205) 409-4145
Email: kgochett@mxlawfirm.com
          maxwell@mxlawfirm.com

## DEFENDANT(S) SERVED VIA CERTIFIED MAIL:

**Lieutenant Trina Phillips**
Walker County Jail
2001 2nd Avenue
Jasper, AL 35501

**Officer Richard Holtzman**
Walker County Jail
2001 2nd Avenue
Jasper, AL 35501

**Officer Courtland Jones**
Walker County Jail
2001 2nd Avenue
Jasper, AL 35501

**Officer Jacob Edwards**
Walker County Jail
2001 2nd Avenue
Jasper, AL 35501

**Officer Jon Hill**
Walker County Jail
2001 2nd Avenue
Jasper, AL 35501

**Officer Matt Price**
Walker County Jail
2001 2nd Avenue
Jasper, AL 35501

**Nurse Practitioner Aleisha Herron**
Walker County Jail
2001 2nd Avenue
Jasper, AL 35501

_/s/ Kristen E. Gochett_
OF COUNSEL